**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMIE SARDO, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>FIRST SOURCE FEDERAL CREDIT UNION,<br><br>Defendant. | Civil Action No. 5:23-cv-875(BKS/TWD)<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Jamie Sardo ("Plaintiff"), on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1.  This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant First Source Federal Credit Union ("FSFCU"), arising from its routine practice of charging two or more fees, including OD Fees and non-sufficient funds fees ("NSF Fees"), on a single item.

2.  This practice breaches contractual promises made in FSFCU's adhesion contracts.

3.  In FSFCU's sole and undisclosed view, each time FSFCU processes an ACH transaction or check for payment after having been rejected for insufficient funds, it becomes a new, unique item or transaction that is subject to another fee. But FSFCU's Account Documents never even hint that this counterintuitive result could be possible.

4.  FSFCU's Account Documents indicate that only a single fee will be charged for

1

however many times the request for payment is reprocessed. An electronic item reprocessed after an initial return for insufficient funds cannot and does not fairly become a new, unique item for fee assessment purposes.

5. FSFCU breaches its contract, the Account Documents, when it charges more than one fee on the same item, since the contract states—and reasonable consumers understand—that the same item can only incur a single fee.

6. This practice works to catch accountholders in an increasingly devastating cycle of bank fees.

7. Plaintiff and other FSFCU customers have been injured by FSFCU's practices. On behalf of himself and the putative class, Plaintiff seeks damages, restitution and injunctive relief for FSFCU's breach of contract and violation of consumer protection law.

## PARTIES

8. Plaintiff Jamie Sardo is a resident and a citizen of Baldwinsville, New York. Plaintiff has a checking account with FSFCU.

9. Defendant FSFCU is a bank with over $930 million dollars in assets. It is headquartered in New Hartford, New York and maintains offices and conducts substantial business in Oneida County. Accordingly, pursuant to 28 U.S.C. § 1348, FSFCU is a citizen of New York.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

    a. the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B);

    b. at least one member of the proposed class is a citizen of a State other than New York (the State of which FSFCU is a citizen), § 1332(d)(2)(A); and

   c. the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because FSFCU is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

12. As alleged more fully herein, FSFCU's Account Documents allow it to take certain steps when its accountholders attempt a transaction but does not have sufficient funds to cover it. Specifically, FSFCU may (a) authorize the transaction and charge a *single* OD Fee; or (b) reject the transaction and charge a *single* NSF Fee.

13. In contrast to its Account Documents, however, FSFCU regularly assesses two or more fees on the *same* item.

14. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if a transaction is resubmitted for payment multiple times.

15. FSFCU's Account Documents never disclose this practice. To the contrary, FSFCU's Account Documents indicate it will only charge a single fee on an item or per transaction.

### A. Plaintiff's Experience.

16. In support of his claim, Plaintiff offers examples of fees that should not have been assessed against his checking account. As alleged below, First Source FCU: (a) reprocessed previously declined transactions; and (b) charged an additional fee upon reprocessing.

17. For example, in June of 2023, Plaintiff was charged an NSF Fee on a transaction that was resubmitted by the merchant for payment without Plaintiff's request to reprocess the transactions.

18. Each merchant request for payment was for a single transaction and, as is laid out in Essa Bank's Account Documents, should be subject to, at most, a single NSF or OD Fee (if Essa Bank returned it or paid it).

**B.  The Imposition of Multiple Fees on a Single Item Violates FSFCU's Express Promises and Representations**

19. The Account Documents provide the general terms of Plaintiff' relationship with FSFCU and therein FSFCU makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

20. The Account Documents contain explicit terms indicating that fees will only be assessed once per check or item when in fact FSFCU regularly charges two or more fees per check or item even though a customer only requested the payment or transfer once.

21. FSFCU's Account Documents indicate that a singular fee can be assessed on checks, ACH debits, and electronic payments.

22. Specifically, the Fee Schedule, states:

Non-sufficient funds                                          $ 25.00

Ex. A.

23. FSFCU's Account Documents indicate that it will charge a single fee per item that is returned due to insufficient funds.

24. The same item cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

25. There is zero indication anywhere in the account documents that the same item is

4

eligible to incur multiple fees.

26. Even if FSFCU reprocesses an instruction for payment, it is still the same item. FSFCU's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

27. The disclosures described above never discuss a circumstance where FSFCU may assess multiple fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

28. In sum, FSFCU promises that one fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment.

29. As such, FSFCU breached the contract when it charged more than one fee per single item.

30. Reasonable consumers understand any given authorization for payment to be one, singular item, as those terms are used in FSFCU's Account Documents.

31. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same item, which FSFCU will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does FSFCU disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do FSFCU customers ever agree to such fees or practices.

32. Customers reasonably understand, based on the language of the Account Documents and FSFCU's other documents, that the credit union's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item.

33. Banks and credit unions like FSFCU that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something FSFCU never did.

34. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as FSFCU, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(emphasis added).

35. First Hawaiian Bank engages in the same abusive practices as FSFCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

36. Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection: "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds."

37. BP Credit Union likewise states: "Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result

of a returned item and resubmission(s) of the returned item."

38. Regions Bank likewise states:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

REGIONS BANK, *Deposit Agreement* (2018), https://bit.ly/3ugbvFz.

39. Andrews Federal Credit Union states:

You understand and agree that a merchant or other entity may make multiple attempts to re-submit a returned unpaid item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item (e.g., checks, electronic fund transfers and payments that you initiate through the Credit Union's Digital Banking or Bill Payment services). Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

ANDREWS FED. CREDIT UNION, *Terms & Conditions* (2020), https://bit.ly/2Tj2kYn.

40. Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item

CONSUMERS CREDIT UNION, *Member Services Guide* (2018), https://bit.ly/3vrPtBq.

41. Wright-Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item

7

resubmission regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

WRIGHT-PATT CREDIT UNION, INC., *Important Account Information* (2020), https://bit.ly/3vnqrmT.

42. Railroad & Industrial Federal Credit Union states:

Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

R.R. & INDUS. FED. CREDIT UNION, *Important Account Information for Our Members: Membership and Account Agreement* (2019), https://bit.ly/3vnpXgz.

43. Partners 1st Federal Credit Union states:

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

PARTNERS 1ST FED. CREDIT UNION, *Consumer Membership & Account Agreement* (2019), https://bit.ly/3bT0V0U.

44. Members First Credit Union of Florida states:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once. . . . [W]e reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment . . . .

MEMBERS FIRST CREDIT UNION OF FLORIDA, *Membership and Account Agreement* (2013), http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf.

8

45. Community Bank, N.A., states:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

CMTY. BANK, N.A., *Overdraft and Unavailable Funds Practices Disclosure* (2019), https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure.pdf.

46. RBC Bank states:

> We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

RBC BANK, *Service Agreement for Personal Accounts* (2014), https://bit.ly/2TdObvn.

47. Diamond Lakes Federal Credit Union states:

> Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

DIAMOND LAKES FED. CREDIT UNION, *Terms and Conditions* (2021), https://www.diamondlakesfcu.org/termsconditions.html.

48. Parkside Credit Union states:

> If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge <u>on each occasion that the item is presented for payment</u>. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

PARKSIDE CREDIT UNION, *Membership and Account Agreement* (2020), https://bit.ly/3vnkRkr.

49. First Financial Bank in Ohio, aware of the commonsense meaning of "item," clarifies the meaning of that term to its accountholders:

9

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly.

FIRST FIN. BANK, *Special Handling/Electronic Banking Disclosure of Charges* (2021), https://bit.ly/3wvGpeK.

50. FSFCU provides no such disclosure, and in so doing, deceives its accountholders.

## CLASS ALLEGATIONS

51. Plaintiff bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

52. The proposed class is defined as:

All FSFCU accountholders who, during the applicable statute of limitations through the date of class certification, were charged multiple fees on the same item.

53. Plaintiff also brings an alternative state subclass on behalf of New York residents.

54. The Nationwide Classes and alternative state subclass defined above are collectively referred to herein as the "Classes." Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

55. Excluded from the Classes are FSFCU, its parents, subsidiaries, affiliates, officers and directors, any entity in which FSFCU has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

56. The members of the Classes are so numerous that joinder is impractical. The Classes consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, FSFCU's records.

57. The claims of the representative Plaintiff are typical of the claims of the Classes he seeks to represent in that the representative Plaintiff, like all members of the Classes, were charged improper and deceptive fees as alleged herein. The representative Plaintiff, like all members of the Classes, were damaged by FSFCU's misconduct in that they were assessed multiple fees on the same item. Furthermore, the factual basis of FSFCU's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. And FSFCU has no unique defenses that would apply to Plaintiff and not the Classes.

58. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

59. The questions of law and fact common to the Classes include, but are not limited to, the following:

    a. Whether FSFCU's assessment of multiple fees on the same item was in breach of its contract;

    b. Whether FSFCU's assessment of multiple fees on the same item was unfair, deceptive, or misleading;

    c. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

    d. Whether Plaintiff and the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

60. Plaintiff's claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful multiple fee policies and practices. Plaintiff has suffered the

harm alleged and has no interests antagonistic to the interests of any other member of the Classes.

61. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions. Accordingly, Plaintiff is an adequate representatives and will fairly and adequately protect the interests of the Classes.

62. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Classes' claim is small relative to the complexity of the litigation, and due to the financial resources of FSFCU, no member of the Classes could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and FSFCU's misconduct will proceed without remedy.

63. Even if members of the Classes themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

64. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

65. FSFCU has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with

respect to each Classes as a whole.

66. All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CLAIM FOR RELIEF
### Breach of Contract, Including Breach of the Implied Covenant
### (On Behalf of Plaintiff and the Nationwide Class)

67. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

68. Plaintiff and FSFCU have contracted for bank account deposit, checking, ATM, and debit card services. That contract does not permit FSFCU to charge Multiple Fees on the same transaction.

69. Nowhere in the Account Agreement did FSFCU state that would charge multiple fees on the same item.

70. Good faith is an element of every contract. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

71. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to

cooperate in the other party's performance.

72. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

73. Plaintiff and members of the Class have sustained damages as a result of FSFCU's breach of the contract.

### SECOND CLAIM FOR RELIEF
### Deceptive Acts or Practices – N.Y. Gen. Bus. Law § 349
### (On Behalf of Plaintiff and the New York Subclass)

74. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

75. This cause of action is asserted on behalf of the New York Subclass, whose members enjoy the protections of Article 22-A of the New York General Business Law, the Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a).

76. FSFCU's policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who maintain checking accounts with FSFCU.

77. The complained-of policies and practices were and are misleading in a material respect, because FSFCU promised to charge one fee per item, when in fact it charged multiple fees on the same item.

78. Had Plaintiff and the members of the New York Subclass known they could be charged Multiple Fees on the same item, they would have made different payment decisions so as to avoid incurring such fees and/or would have banked elsewhere.

14

79. Plaintiff and members of the New York Subclass were injured as a result of FSFCU's policies and practices, in that their accounts were debited by FSFCU in violation of their agreements with the bank.

80. FSFCU's actions were willful and knowing.

81. As redress for FSFCU's repeated and ongoing violations of these consumer protection statutes, Plaintiff and members of the New York Subclass each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1. Declaring FSFCU's policies and practices as described herein to be wrongful, unfair, and unconscionable;

2. Restitution of all amounts paid to FSFCU by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3. Disgorgement of the ill-gotten gains derived by FSFCU from its misconduct;

4. Actual damages in an amount according to proof;

5. Treble damages pursuant to applicable law and in an amount according to proof;

6. Punitive and exemplary damages;

7. Pre-judgment interest at the maximum rate permitted by applicable law;

8. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: July 19, 2023

Respectfully submitted,

*/s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel (Bar Roll No. 518372)
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
(202) 350-4783
*jkaliel@kalielgold.com*

Sophia G. Gold (Bar Roll No. 701241)
KALIELGOLD PLLC
950 Gilman Street, Suite 200
Berkeley, CA 94710
*sgold@kalielgold.com*

Christopher D. Jennings (*pro hac vice* forthcoming)
Tyler B. Ewigleben (*pro hac vice* forthcoming)
JOHNSON FIRM
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com
tyler@yourattorney.com

*Counsel for Plaintiff and the Proposed Class*